# Pate *v.* The State.

## *Murder.*

(Decided March 2, 1907. 43 So. Rep. 343.)

1. *Indictment; Quashing; Grounds.*—Under Sec. 5269, Code 1896, it is not grounds for quashing indictment that the grand jury was not organized according to law, and that the jury commissioners did not first draw the required number of persons as grand jurors and then draw the requisite number of petit jurors.
2. *Jury; Venire; Quashing; Grounds; Sufficiency.*—Under Sec. 4997, Code, 1896, it is not gronds for quashing a venire of petit ju-

[Pate y. The State.]

rors that the jury was not organized according to law, in that the jury commissioners, in drawing the grand and petit jurors, drew a sufficient number for both and from the whole lot selected the grand jurors and then the petit jurors.

3. *Homicide; Evidence; Dying Declarations; Preliminary Proof.*— It is permissible to show that on the night after the shooting deceased repeatedly said that he was going to die, and that he could not recover from the wound, and that he had no hopes of ever getting well again, as a predicate for the admission of dying declarations, and such evidence was sufficient to admit such declarations.

4. *Criminal Law; Demonstrative Evidence.*—It being shown that the clothes worn by decedent at the time of the infliction of the fatal wound were in the same condition as when taken off decedent, except that they had been washed, they were properly admitted in evidence.

5. *Homicide; Dying Declarations; Admissibility.*—Although deceased had previously made a dying declaration to another person, which had been reduced to writing, it was permissible to permit another witness, to whom deceased had said that he was going to die, and could not recover to detail statements made by deceased as to the circumstances attending the infliction of the fatal wound.

6. *Same; Evidence; Admissibility.*—It was proper to exclude the testimony of a witness as to his seeing decedent with a pistol two years before the difficulty, and that it was not concealed.

7. *Criminal Law; Evidence; Res Gestae.*—It is competent to show as a part of the res gestea what defendant did immediately after he shot deceased.

8. *Same; Self Serving Declaration.*—Where the state made no effort to show flight the fact that defendant surrendered himself to the sheriff the day after the commission of the crime was inadmissible as a self serving declaration.

9. *Same; Appeal; Prejudicial Error.*—It is not error to refuse a charge which is covered by a charge given.

10. *Same; Instructions; Invading Province of Jury.*—A charge asserting that if the accused has proven a good character the same may be sufficient to create a reasonable doubt of his guilt, though no such doubt would have existed but for the proof of good character, pretermits a consideration of that evidence in connection with all the other evidence in the case, gives undue prominence to a particular fact, and was properly refused.

11. *Same; Abstract Instructions.*—It is not error to refuse or to give abstract instructions.

12. *Witnesses; Examination; Incriminating Evidence.*—Where it was shown that the killing of decedent's son was almost contemporaneous with the killing of decedent and so closely associated with it as to render it a part of the res gestea, accused becoming a witness for himself, may be properly questioned as to the circumstances of the killing of the son.

APPEAL from Pickens Circuit Court.

Heard before Hon. S. H. SPROTT.

Can Pate was convicted of murder, and he appeals. Affirmed.

Upon his arraignment upon the indictment the defendant interposed the following motion to quash the same: "(1) The grand jury returning said indictment was not organized according to law: (2) The jury commissioners of said county did not, in drawing the grand jury, first draw the requisite number of persons to serve as grand jurors and then in like manner proceed to draw the requisite number to serve as petit jurors, but drew a list of persons sufficient for both the grand and petit jurors for the first week term of the court, and from such list they selected such persons as in their judgment would make suitable grand jurors." To this motion the State interposed demurrers: "To the second ground thereof, for that the facts therein set forth do not show any legal grounds for quashing said indictment. (2) Because it fails to show that the grand jury was not drawn in the presence of the officers designated by law to draw grand juries. (3) Because it fails to show any order of court on record relating to the organization of grand jury, which is contrary to or unauthorized by law." These demurrers were sustained, and upon calling the case for trial the defendant interposed a motion to quash the venire drawn for the trial, to the regular panel thereof, for the same reasons assigned in the motion to quash the indictment. The State interposed the same demurrers thereto, with a change as to the kind of jurors, and the demurrers were sustained.

Upon the introduction of Mrs. Pate and the witness Shirley, each were permitted to testify that on Tuesday night, following the shooting that morning, deceased told them repeatedly that he was going to die, that he

[Pate v. The State.]

could not recover from the wounds, and that he had no hope of ever getting well again. These declarations were objected to, but were overruled, when the solicitor informed the court that they were asked as a predicate for the introduction of dying declarations. By Mrs. Pate the State proved the declarations of the deceased made on Wednesday morning after the shooting on Tuesday, that defendant shot him, and the circumstances surrounding the shooting. On cross-examination it was shown that the declarations she testified to were not taken down in writing, and for that reason motion was made to exclude them, as another witness had reduced them to writing. This motion the court overruled. When defendant's witness was upon the stand the defendant asked him if the deceased was in the habit of carrying concealed weapons, and the witness answered that he did not know whether he was or not, that the only time he ever saw him with a pistol was about two years before, and that it was not concealed. The State moved to exclude that part of the answer of the witness as to the deceased having a pistol two years before.

The testimony for the state tended to show that as Walter Pate and his father were returning from a trip to the place from whence they had moved, the father riding in a wagon and Walter walking behind, they passed in front of the gate of the defendant. The defendant was there near the gate, with his gun standing near by, and defendant's son was standing at the gate, with a gun in his hand. Some conversation ensued, and defendant raised his gun and fired, striking deceased with a load of BB buckshot, the same entering deceased's back near the small of the back, and making the wound 3 by 3 1-2 inches; that this happened Tuesday morning. The clothes worn by deceased were shown to be in the same condition in which they were when the shooting occurred, except that they had been washed. It was shown that there was no left-hand hip pocket in deceased's trousers; but there was a right-hand pocket, and it was shown that two of these shots passed through the hight-hand pocket near the top. It was also shown

that the deceased was a left-handed man. Evidence for the defense tended to show that, as deceased was passing along the road, a conversation ensued between him and defendant in which some opprobrious language was used by deceased towards defendant, and, upon defendant's replying thereto, the deceased said he would kill him, and immediately advanced rapidly towards him, throwing his hand back toward his hip pocket, when defendant fired, and deceased staggered off a few steps and fell.

At the conclusion of the testimony the defendant requested a number of charges, which were refused: (1) "If the defendant shot under the *bona fide* belief that his life was in danger, and he had, under all the circumstances, reasonable cause to believe that he was in imminent danger at the moment the shot was fired, it would be immaterial whether there was such actual danger or not." (A) "If the prisoner has proven a good character as a man of peace, the law says that such good character may be sufficient to create or generate a reasonable doubt of his guilt, although no such doubt would have existed but for such good character." (18) "One is justified in taking the life of another, if at the time there reasonably appeared to be a present impending necessity to do so."

The court gave the following charges for the state: (1) "The state is not required to prove the defendant's guilt beyond all doubt, but only beyond a reasonable doubt." (2) "The doubt, to acquit defendant, must be actual and substantial, not mere possibility or speculation. It is not a mere possibility, or possible doubt, because everything relating to human affairs and depending upon moral evidence is open to some possible or imaginary doubt."

The other facts sufficiently appear in the opinion of the court.

DANIEL COLLIER, and CURRY & ROBISON, for appellant.—The court erred in sustaining demurrers to the motion to quash the indictment and the regular panel— *Wells v. The State,* 94 Ala. 1; *Johnson v. The State,* 102

Ala. 21. The court erred in the admission of dying decla-rations.—*Justice v. The State,* 99 Ala. 180; *Titus v. The State,* 117 Ala. 20; *Boulden v. The State,* 102 Ala. 84. The court erred in permitting the cross examination of defendant. Such questions force the confession and tend to incriminate the party giving the evidence.—*Rains v. The State,* 88 Ala. 91; *Clark v. The State,* 87 Ala. 71; *Cotton v. The State,* 87 Ala. 103; *Smith v. The State,* 79 Ala. 23. The court erred in refusing to give charge 1.—*Schneider v. The State,* 40 South. 978; *Kennedy v. The State,* 140 Ala. 1. The court erred in refusing charge 3.—*Fields v. The State,* 47 Ala. 603. Charge 21 was improperly refused.—*Roberts v. The State,* 68 Ala. 156; *Cook v. The State,* 83 Ala. 62; *Washington v. The State,* 82 Ala. 31. Charge 18 was also improperly re-fused.—*Goodwyn v. The State,* 102 Ala. 100; *Keith v. The State,* 97 Ala. 34; *Stoball v. The State,* 116 Ala. 454.

ALEXANDER M. GARBER, Attorney-General, for appel-lee. No brief came to the Reporter.

ANDERSON, J.—The motion to quash the indict-ment did not disclose a good ground for quashing, and the demurrers thereto were properly sustained.—Sec-tion 5269, Code 1896; *Thompson v. State,* 122 Ala. 12, 26 South. 141.

The demurrer to the motion to quash the venire was properly sustained.—Section 4997 of the Code of 1896, among other things, provides: "And no objection can be taken to any venire facias for a petit jury, except for fraud in drawing or summoning the jurors." The cases cited by counsel for appellant were decided before the adoption of the Code of 1896.—*Wells v. State,* 94 Ala. 1, 10 South. 656; *Johnson v. State,* 102 Ala. 21, 16 South. 99. The words above quoted from section 4997 of the Code of 1896 were evidently adopted by our lawmakers to cover a case like this and to cure the defect in the law as construed in the Wells and Johnson Cases, supra.

The trial court did not err in overruling defendant's motion to exclude the evidence of witness Shirley as to what defendant said as to his condition and that he

would die. It was a predicate for dying declarations which were subsequently introduced in evidence. There was no merit in the objection by the defendant to the proof of the declaration made by deceased, as a sufficient predicate had been established.

The clothes of the deceased were properly admitted in evidence. The witness testified that the clothes were in the same condition as when taken off the deceasd, except that they had been washed. Granting that the blood had been washed out, they were relevant to show, from the holes therein, where the bullets pierced the deceased.

The trial court properly overruled the objection to the dying declarations as disclosed by the testimony of Mrs. Emma F. Pate. It was not the same statement that was written down by Mr. Morgan.

There was no error in excluding, upon motion of the state, what the witness said about seeing the deceased at one time with a pistol which was not concealed.

There was no error in permitting the state to show what the defendant did immediately after he shot deceased, as the evidence shows that the act disclosed by the evidence was clearly a part of the res gestae.

The trial court properly refused to let defendant prove that he voluntarily surrendered himself to the sheriff the day after the killing. A defendant cannot, by his own acts and declarations, make testimony for himself. Nor was it relevant as to when and where the sheriff arrested the defendant. The state had made no effort to show flight, and such evidence could not be competent to refute any evidence or inference of flight.

Charge 1, refused the defendant, was approved by this court in the cases of *Kennedy v. State*, 140 Ala. 1, 37 South. 90, and *Snyder v. State*, 145 Ala. 33, 40 South. 978, as it applied to the facts in those cases. Whether the facts in this case would support the charge, or not, we need not decide; for, if the court committed error in refusing same, it was error without injury and would not reverse the case.—Code 1896, § 4333. This charge was more than covered by written charge 35, given at the request of the defendant.

[Pate v. The State.]

Charge A, requested by the defendant, was properly refused. Good character may be sufficient to generate a reasonable doubt of guilt, although no such doubt would exist without good character; but a charge asserting this proposition gives too much prominence to good character, and should be refused when it pretermits a consideration of the proof of good character in connection with all the evidence in the case.—*Crawford v. State,* 112 Ala. 1, 21 South. 214; *Paul v. State,* 100 Ala. 136, 14 South. 634; *Goldsmith v. State,* 105 Ala. 8, 16 South. 933; *Scott v. State,* 105 Ala. 57, 16 South 925, 53 AM. St. Rep. 100. The case of *Fields v. State,* 47 Ala. 603, 11 Am. Rep. 771, has been in effect overruled.

Charge 18, refused to the defendant, is the same as given charge 35. The trial court could have safely refused both of them. They each justify the act upon appearances, regardless of who provoked the difficulty, and are much broader and more favorable to the defendant than refused charge No. 1, in the case at bar, and the charge held good in the cases of *Kennedy* and *Snyder, supra.*

All of the other written charges requested by defendant were properly refused. If not otherwise faulty, they were abstract. The undisputed evidence shows that the deceased was shot in the back while in or very near the road, and that he was not invading the defendant's castle or curtilage.

The two charges given at the request of the state assert the law.—*Jimmerson v. State,* 133 Ala. 18, 32 South. 141.

Affirmed.

DOWDELL, DENSON, and MCCLELLAN, JJ., concur.

## ON REHEARING.

ANDERSON, J.—It is insisted by counsel for defendant, that this case should have been reversed because the trial court erred in permitting the state to interrogate the defendant, while upon the stand as a witness in his own behalf, in reference to shooting the

2 R

father of the man whom he was being tried for killing, upon the idea that it was violative of his constitutional right to require him to give evidence as to another offense, and thus give evidence which would incriminate him upon a trial for said other offense. It is true that a defendant cannot be compelled to give evidence against himself; but, when he avails himself of the right to testify as a witness in his own behalf, he waives the constitutional protection as to all facts relevant to the issues involved and may be fully cross-examined.—*Clark v. State* 87 Ala. 71, 6 South. 368; *Cotton v. State*, 87 Ala. 103, 6 South. 372. It is true he could not be questioned concerning an offense so disassociated with the one involved as not to form a part of the res gestae; but he can be examined as to all matters relevant to the one at bar, although his answer might incriminate him in another prosecution. The questions complained of in the case at bar elicited evidence that was competent. It was a part of the res gestae, and the state had the right to ask about the killing of the father, although he could be separately prosecuted for killing him.

The Alabama cases cited by counsel (*Davis' Case*, 131 Ala. 16, 31 South. 569; *Cooper v. State*, 86 Ala. 610, 6 South. 110, 4 L. R. A. 766, 11 Am. St. Rep. 84; *Potter v. State*, 92 Ala. 37, 9 South. 402; *Chastang v. State*, 83 Ala. 29, 3 South. 304) have no application to this question, as they relate to the acts of the accused not on his cross-examination as a witness. Most of them hold that the state cannot prove that the defendant declined to make tracks for comparison. Nor is the case of *Boyd v. United States*, 116 U. S. 616, 6 Sup. Ct. 524, 29 L. Ed. 746, an authority in favor of defendant's contention. There the court held that a defendant could not be forced to produce documents that would incriminate him. The right to cross-examine was not involved. In the case at bar the killing of the father was almost contemporaneous with the killing of the son, and was so closely associated with it as to render it a part of the res gestae, and when the defendant took the stand as a witness the state had the right to question him as to

any fact that was relevant, regardless of the consequences to him.—*Scams v. State,* 84 Ala. 410, 4 South. 521.

The application for rehearing is overruled.