PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* JOSÉ MARÍA BERNABE, Defendant and Appellant.

No. 6011. Argued May 5, 1936.—Decided December 22, 1936.

*Martínez Nadal & Navarro Ortiz* for appellant. *R. A. Gómez, Prosecuting Attorney,* and *Luis Janer, Assistant Prosecuting Attorney,* for appellee.

MR. JUSTICE HUTCHISON delivered the opinion of the Court.

Bernabe was convicted of manslaughter on an information for murder.

█ One of the jurors had formed an opinion from what he had read in the newspapers. After examination by the defense and cross-examination by the district attorney, the

district judge questioned the juror and refused to sustain a challenge for cause. The juror was then excluded by a peremptory challenge. The first assignment goes to the refusal of the district judge to sustain the challenge for cause.

In the absence of any serious discussion by appellant of the question here sought to be raised we need only refer to Subdivision 7 of Section 227 of the Code of Criminal Procedure and to *People* v. *Cortés,* 42 P.R.R. 886, and *People* v. *Morales,* 45 P.R.R. 185.

██ Appellant relies mainly upon the second ground of appeal set forth as follows:

"2.—The verdict in this case is *contrary to the evidence.* In effect, from all the evidence offered by the People of Puerto Rico as well as by the defense, it has been proved, beyond all reasonable doubt, that the accused, José María Bernabe, when he shot Vicente Vigil twice with a revolver, in his own barber shop, where he worked, acted in self-defense of his own life, under the justified belief, due to the repeated threats made against him by Vigil, to that effect, which threats were communicated to him by several persons."

It may be conceded that Vigil had repeatedly made threats which had been communicated to Bernabe and that Bernabe for some time had been in fear of serious bodily harm. Whether he was in immediate danger or had reasonable cause to believe that he was in immediate danger of such bodily harm at the time of the killing was a question of fact for the jury.

The barber shop had two doors, a large and a small one. The small door was to the left of the large one. To the left of the small door was the show window of an adjoining building known as the Plaza Store. The testimony for the defense was to the effect that Vigil had passed the large door of the barber shop, had stopped beyond the wall between the two doors, had peeped through the small one into the barber shop and had then started to enter with his left hand in his coat pocket and his right hand on or near his hip

pocket when he was shot by Bernabe. The testimony for the prosecution tended to show that Vigil had passed the barber shop, entered a building several doors beyond in quest of a physician and, on his return, had stopped and was standing in front of the show window to the left of the barber shop looking at the display when Bernabe peeped out of the small door of the barber shop and then opened fire. A number of the witnesses for the prosecution also testified that Vigil, while standing before the show window, had his left hand in his coat pocket and his right hand on or near his hip pocket. Some of these witnesses also said that Vigil habitually carried his hands in his pockets. One or more of these witnesses also testified that Vigil was looking up and down the street and that the show window was empty. At least one witness for the prosecution testified that Vigil's hands were by his side in a natural and normal position. He was unarmed. This testimony for the prosecution, if believed in whole or in its essential features by the jury, was enough to justify a conviction. See *People* v. *Díaz,* 16 P.R.R. 67; *People* v. *Pacheco,* 40 P.R.R. 377; *People* v. *Millán,* 46 P.R.R. 859; *Molphus* v. *State,* 87 So. 133, 135; 30 C. J. 64, Sec. 235; Id. 60, Sec. 230; *Mullins* v. *Commonwealth,* 188 S. W. 1079, 1082; *State* v. *Molitz,* 122 Pac. 86 and *Andrews* v. *State,* 72 So. 753.

■ The third assignment goes to the exclusion of certain evidence. The possibility that the result would have been different if this evidence had been admitted is very remote. Hence, we are not prepard to say that the error if any in excluding it was prejudicial.

The fourth assignment goes to the admission of certain evidence which we think was clearly admissible. Here also the error if any could hardly be regarded as reversible error.

The judgment appealed from must be affirmed.

Mr. Chief Justice Del Toro and Mr. Justice Córdova Dávila took no part in the decision of this case.

MR. JUSTICE HUTCHISON delivered the opinion of the Court.

In a motion for re-hearing, appellant says:

"This Hon. Court, in making an analysis of the briefs and of the transcript of evidence, for the purpose of arriving at its resolution in this case, places great emphasis on the analysis of the declaration of a witness for the state, whom it does not mention, to the effect that said witness testified that the deceased 'had his hands at his sides, in a normal position, and that he was unarmed.' "

The stenographic record of the testimony of José Laguna, a witness for the prosecution, closes with the following incident:

"Judge: Did you see in what position Vigil had his hands when you passed him?

"W.—Yes, sir.

"J.—How did he have his hands?

"W.—He was calm, with his hands down, looking at the window.

"J.—Did you see his hands?

"W.—Yes, Sir.

"J.—Did he not have them in his pockets?

"W.—No, sir.

"District Attorney: Did you observe well, or did you not notice how he had his hands?

"W.—Yes, I greeted him.

"District Attorney: That is all."

This witness did not say that Vigil was unarmed. It was not our purpose to quote him or any other individual witness as having said that Vigil was unarmed. The statement in our opinion that Vigil was unarmed was, or was intended to be, an independent statement of fact. In any event, it was an undisputed fact.

Our statement that "At least one witness for the prosecution testified that Vigil's hands were by his side in a natural and normal position" was not a direct quotation. It was an attempt to state in one sentence the gist of Laguna's testimony as set forth in the above extract. It was not our

intention to stress that testimony: All reference to it might have been omitted without affecting the result in this court.

██ Appellant now says that the sentence imposed by the district court was excessive. It would suffice to say that this point was not raised by the assignment of errors and is not a sufficient ground for rehearing. Nevertheless, we may add that we did not overlook it in our consideration of the evidence as a whole but we did not find any such abuse of discretion as to justify a modification of the judgment.

The motion for rehearing must be denied.

Mr. Justice Wolf and Mr. Justice Córdova Dávila took no part in the decision of this case.